SLIP OPINION



Cite as 2015 Ark. App. 436

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-15-138

| | |
|---|---|
| MAX DOUGLAS BISHOP<br>APPELLANT | **Opinion Delivered** September 2, 2015 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CR2008-1150-2] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BRAD KARREN, JUDGE |
| | AFFIRMED |

## RITA W. GRUBER, Judge

A Benton County jury found appellant, Max Douglas Bishop, guilty of thirty counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child. He was sentenced on each count to 48 months in the Arkansas Department of Correction, with counts 1–15 to run consecutively for a total of 720 months' imprisonment and counts 16–30 to run concurrently with counts 1–15. On appeal, he challenges the sufficiency of the evidence to support the convictions. He argues that the State presented insufficient evidence that he knowingly downloaded onto his computer images depicting sexually explicit conduct involving a child.[1] We affirm.

The offense of distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child is committed when a person knowingly "[p]ossesses or views

---

[1]Appellant argued in his motions for directed verdict that the State failed to prove both that he knowingly downloaded these images and that the children in the images were under the age of seventeen. On appeal, he abandons his argument regarding proof of age.

through any means, including on the internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct." Ark. Code Ann. § 5-27-602(a)(2) (Repl. 2013). The culpable mental state "knowingly" is defined by statute:

A person acts knowingly with respect to

(A) The person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or

(B) A result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result[.]

Ark. Code Ann. § 5-2-202(2) (Repl. 2013).[2]

In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the State and consider only evidence that supports the verdict. *Spight v. State*, 101 Ark. App. 400, 402, 278 S.W.3d 599, 600 (2008). We affirm a conviction if it is supported by substantial evidence, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Id.* The assessment of credibility is left to the jury. *Hutcheson v. State*, 92 Ark. App. 307, 313, 213 S.W.3d 25, 29 (2005).

Applying these standards, we review the evidence in the present case. Naval Criminal Investigation Special Agent Rachel Clergy testified about her work in undercover

[2]Arkansas Code Annotated sections 5-27-602 and 5-2-202 were formerly codified in Replacement Volume 2006.

communications in Bremmer, Washington, as part of the Internet Crimes Against Children Task Force—investigating crimes against children, crimes within the family, domestic violence, and spousal rape. Pretending to have a Navy spouse and twelve-year-old twins, and using the profile name "navydubletruble" in Yahoo Messenger, she targeted individuals in chat rooms geared toward family sex and sex with underage children. Someone with the profile name "iam_adad," who was also known as "nastydad," contacted her in fetish room 12 and initiated a chat with her on May 29, 2007. They chatted again on May 29, May 31, June 6, June 7, July 18, July 26, July 31, August 27, September 6, September 16, October 14, October 19, October 20, October 22, and October 23—always in instant messages. In the first chat, nastydad discussed being a nudist and having a fight with his daughters about keeping their clothes on. In the June 6 chat, he told Clergy that he was an application programmer working from home in southwest Missouri and that his children were school-aged. He mentioned on June 7 that he had a high sex drive and was "hard most of the day" and that his daughters found this funny and tormented him—a statement causing Clergy concern. On July 31, he began chatting about performing sexual acts with his daughters; later, he said that they were in the fourth and sixth grades.

Clergy recorded the conversations and prepared a search warrant in order to get information from Yahoo about the individual she had chatted with. She testified that she obtained the user's login name, e-mail, and IP addresses and determined that the Internet provider was Cox Communication. She then prepared a search warrant for Cox, which identified appellant as the user of the IP address, with the physical address of 2013 Southwest

Home Place Avenue in Bentonville, Arkansas. Clergy detailed this information in a report that she passed along to Arkansas authorities.

Detective Dennis Schumacher, working in the Cybercrime Division of the Benton County Sheriff's Office, obtained a search warrant for appellant's residence based on Clergy's report. Schumacher made contact with appellant at the residence, seized two computers and thumb drives, obtained appellant's signature on a rights form, and interviewed him. Explaining that he was there because of "chatting about molesting children," Schumacher asked appellant about child pornography. Appellant acknowledged engaging in such chatting, which he called fantasy, and said that he had no children and was "just role-playing" when chatting about teaching them to have sex. He told Schumacher, "I basically have a pornography collection. . . . None of it is real on the internet." He acknowledged that child pornography was saved in a file on his computer and said that forensic evaluation would "find some weird shit on there . . . probably some child pornography . . . basically just everything." He never said that he had a roommate or that another person put anything on the computer.

Detective Schumacher testified regarding items saved on "storage drive one" in subfolders of user-created folders labeled "junk" and "junk one." Schumacher stated that the Internet history showed when and where the user looked at the pictures, the names of the pictures, and downloads to My Pictures. He explained that the computer's peer-to-peer file-sharing system, WinMX, required someone to choose what was brought into the system and that Leech Hammer, also on the computer, was a software program used to thwart undercover investigations. A forensic exam of the computer recovered 5,345 saved images

and 99 saved videos that Schumacher considered to be child pornography. He testified that they had "different last access dates" and that someone was chatting under various profiles on the computer when the files were created. In multiple profiles, the individual described his location as northwest Arkansas and gave his age as thirty-six, descriptions which fit appellant; the individual talked about being unable to help himself because his sex drive was too high—engaging in sex acts with his oldest daughter when she was a year old and breaking in children by accidental exposure to masturbating or engaging in sex acts with adults. Schumacher presented twenty-five images and five videos from appellant's computer in a PowerPoint presentation, verbally describing for the jury the sexual acts and the children depicted.

In his sole point on appeal, appellant challenges the sufficiency of the evidence. He does not dispute the presence of child pornography on his computer, nor does he claim that anyone else lived with him or had access to the computer. He argues only that there was insufficient evidence to show that he knowingly possessed or downloaded the images and videos.

The State responds that there was substantial evidence that appellant exercised dominion and control over the computers that were seized from his residence. We agree. We hold that the testimony of Special Agent Clergy and Detective Schumacher, as summarized above, constitutes substantial evidence that appellant knowingly possessed the images and videos of child pornography saved on his computer. We therefore affirm the convictions for distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child.



Affirmed.

ABRAMSON and HOOFMAN, JJ., agree.

*Charlene Davidson Henry*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.